UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II)** | ) ) ) ) ) | **Case No. 3:23-md-03071**<br>**MDL No. 3071**<br><br>**THIS DOCUMENT RELATES TO: ALL CASES** |

**MEMORANDUM OPINION**

The Attorneys General of the District of Columbia, and the states of Kentucky, Maryland, New Jersey, and Washington ("State AGs") move to intervene for the limited purpose of participating in final-approval proceedings on October 15, 2026, for the proposed class settlements in this multidistrict litigation. (Doc. Nos. 1497, 1498). The State AGs also filed objections to final approval. (Doc. No. 1499). Plaintiffs oppose intervention. (Doc. No. 1549). The Overlap Defendants do not oppose the State AGs' limited request to intervene, but they dispute several of the interests on which the State AGs rely to establish standing and to challenge the settlements. (Doc. No. 1550). The Nonoverlap Defendants and Remaining Defendants join that response. (Doc. Nos. 1551, 1555). The motion is ripe for decision and, for the reasons below, will be denied.

This is not the State AGs' first attempt to intervene in the settlement proceedings. The State AGs first moved to intervene after the Court preliminarily approved the second set of settlements and entered related injunctions. (Doc. No. 1406). Those injunctions prohibited Settlement Class Members "and any person or entity purporting to act or bring claims on behalf of Settlement Class Members" from "prosecuting, pursuing, maintaining, or enforcing any Released Claims" against the settling Defendants "in any forum." (Id. at 6–7). The State AGs believe that this language could unlawfully restrict their pending enforcement actions and sought clarification or modification. (Doc. No. 1415).

The Court denied that motion. (Doc. No. 1463). The Court first explained that the settlements did not release—and the injunctions did not restrict—claims through which the State AGs vindicate their own sovereign or quasi-sovereign interests, including claims for civil penalties and additional injunctive relief. (Id. at 2–3). Rather, the settlements released participating class members' claims for monetary relief, and the injunctions protected those settlements by preventing class members—or others acting on their behalf—from pursuing released claims that would result in improper duplicative damages recovery. (Id.) The Court further concluded that protecting the settlements against duplicative litigation of released claims was authorized under the All Writs Act[1] and served the public interest by providing settling class members and Defendants the benefit and finality of their agreements. (Id. at 2–3). The State AGs appealed that ruling to the Sixth Circuit (Doc. No. 1469), and their appeal remains pending.

One aspect of the Court's prior order warrants clarification. The Court stated that parens patriae claims for damages "belong to class members rather than the states." (Id. at 2). That

[1] The Court previously explained that the preliminary-approval injunctions were issued under the All Writs Act, 28 U.S.C. § 1651(a), and the Anti-Injunction Act's "necessary in aid of its jurisdiction" exception, 28 U.S.C. § 2283, to aid and assist its jurisdiction over the proposed settlements by preventing the prosecution of claims released by settling class members. (Doc. No. 1463 at 2–3). Courts have long recognized this authority in complex multidistrict litigation. See In re Baldwin-United Corp. ("Baldwin-United"), 770 F.2d 328, 335–38 (2d Cir. 1985); In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig., 93 F. Supp. 2d 876, 879–81 (M.D. Tenn. 2000). Although the Sixth Circuit has reserved whether the Anti-Injunction Act's "necessary in aid of its jurisdiction" exception applies in the MDL context, it has not foreclosed that application. See Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC, 38 F.4th 501, 510 (6th Cir. 2022). The Sixth Circuit has likewise left open whether such injunctions require consideration of the traditional preliminary-injunction factors. See id. at 511 n.4. The Court has considered the nonbinding authority addressing that question and is persuaded that those factors need not be separately applied to injunctions issued to protect its jurisdiction. See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."); Baldwin-United, 770 F.2d at 338 ("Injunctions issued under the authority of the All-Writs Act stem from very different concerns than those motivating preliminary injunctions governed by Fed. R. Civ. P. 65.").

statement was overbroad. The Court did not mean that parens patriae claims categorically belong to individual citizens rather than the states. Its point was that the monetary claims released by individuals participating in the settlements *here* belong to the individual class members. The State AGs have not identified a sovereign or quasi-sovereign interest in recovering those same losses apart from the interests of the individual class members themselves. As the Court will explain in more detail below, without such a distinct interest, the State AGs act only as nominal representatives of the individual renters. Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez ("Snapp"), 458 U.S. 592, 602, 607 (1982); Chapman v. Tristar Prods., Inc., 940 F.3d 299, 305–06 (6th Cir. 2019).

The Court also recognizes that its prior order did not separately analyze the requirements for intervention as of right or permissive intervention under Rule 24. Its reasoning nevertheless addressed the considerations underlying both requests. In concluding that the State AGs had not identified a sovereign or quasi-sovereign interest apart from the class members' monetary interests, the Court determined that they lacked the interest necessary to establish standing to intervene as of right. Moreover, in emphasizing the need for finality in class settlements and the disruption that would follow if settling defendants remained exposed to duplicative claims for the same damages, the Court explained why permissive intervention was unwarranted. Although the prior order did not frame those conclusions expressly under Rule 24, the Court clarifies its reasoning here and will apply Rule 24's requirements in full below.

## I. Intervention as of Right

The State AGs argue that they are entitled to intervene as of right because the proposed settlements threaten "existing statutory claims and enforcement rights" they are exercising in pending actions against the settling Defendants. (Doc. No. 1498 at 14–16). They characterize themselves as "sovereign law-enforcement officials prosecuting independent claims that were

never class members' claims to release" that have an "interest in preserving those existing claims and enforcement rights . . . independently of the interests of the private class." (Id. at 16). The State AGs further contend that they possess "independent sovereign and quasi-sovereign interests in enforcing the antitrust and consumer laws designed to protect their residents," including their interest in residents' economic "health and well-being." (Id.) To establish those independent interests, they point to Congress's recognition of the states' "distinct enforcement role" through its exemption of state antitrust actions from multidistrict transfer and its authorization of parens patriae monetary recovery for the "same injury" asserted by private plaintiffs, subject to an offset for duplicative recovery. (Id. (citing 15 U.S.C. § 15c(a)(1); 28 U.S.C. § 1407(g))). They also argue that state law supports the sovereign nature of their enforcement authority, citing the State of Washington's recognition that exercising parens patriae authority "is itself a defining feature of state sovereignty" as an example. (Id. (quoting State v. LG Elecs., Inc., 185 Wash. App. 123, 148–49 (Wash. Ct. App. 2014))).

Those interests, the State AGs contend, may be impaired by the proposed releases in two ways. First, the State AGs argue that the proposed releases, "[i]f given effect," "could impair claims" that they are already prosecuting or, "even if not given effect," could require them "to repeatedly litigate their validity and scope." (Id. at 17). Second, they argue that the related injunctions present an "independent risk of impairment" because, if "construed or extended" to reach their pending actions, it would "directly impede their prosecution, delaying or limiting relief" that they contend is superior to the relief obtained by class counsel. (Id.) They further maintain that these risks are concrete because certain settling Defendants have already invoked the proposed settlements and the Court's orders in the State AGs' pending enforcement actions. (Id. at 17 n.8). According to the State AGs, the possibility that the challenged provisions could "restrain the

States' pending actions, impair existing claims, or force collateral litigation over their validity and scope" satisfies Rule 24(a)(2)'s "minimal impairment standard." (Id. at 17).

Plaintiffs respond that the State AGs have "no more than a nominal interest here" because the settlements affect only the class members' individual compensatory claims while preserving the states' sovereign enforcement authority. (Doc. No. 1549 at 8–9). They argue that the State AGs improperly conflate sovereign claims with representative parens patriae claims by characterizing any claim authorized by statute as an "enforcement claim" or "statutory claim," even when it "duplicates an individual renter's claim." (Id. at 9). According to Plaintiffs, the settlements preserve the State AGs' claims for civil penalties and public injunctive relief while resolving compensatory claims that belong only to individual settlement class members. (Id.) Plaintiffs also dispute the State AGs' contention that the existing parties inadequately represent their interests. (Id. at 9–10). They argue that Settlement Class Counsel adequately represents the class members' compensatory interests and that the states' sovereign claims remain untouched by the settlements. (Id.)

The Overlap Defendants "do not oppose the Five AGs' limited request to intervene" but challenge the asserted interests underlying their motion. (Doc. No. 1550 at 1–9). Separately, the Overlap Defendants argue that the State AGs lack standing to challenge the adequacy of the settlements on behalf of class members. (Id. at 10–11). The Non-Overlap Defendants and the Remaining Defendants join in the Overlap Defendants' position. (Doc. Nos. 1551, 1555).

Rule 24(a)(2) requires intervention when a movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Sixth Circuit

requires the proposed intervenor to establish that "(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest." United States v. Michigan, 424 F.3d 438, 443 (6th Cir. 2005). The Sixth Circuit takes a "rather expansive notion" of the interest sufficient for intervention and generally resolves "close cases . . . in favor of recognizing an interest under Rule 24(a)." Mich. State AFL-CIO v. Miller, 103 F.3d 1240, 1245–47 (6th Cir. 1997).

The Court finds that the State AGs timely moved to intervene in their first and second motions. The Court will assume, without deciding, that the existing parties do not adequately represent the State AGs' asserted interests. The motion thus turns on whether the State AGs have a substantial legal interest in these proceedings that the proposed settlements may impair. Before reaching those requirements, however, the Court must determine whether the State AGs have Article III standing to intervene.

"Federal courts," the Supreme Court has often explained, "are courts of limited jurisdiction." See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Consistent with that limited jurisdiction, federal courts "do not possess a roving commission to publicly opine on every legal question." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). An "intervenor of right," like the State AGs, must show that they have "standing in order to pursue relief that is different from that which is sought by a party with standing." Town of Chester, N.Y. v. Laroe Ests., Inc., 581 U.S. 433, 440 (2017). The State AGs must satisfy three elements: "injury in fact, causation, and redressability." Diamond Alt. Energy, LLC v. EPA, 606 U.S. 100, 111 (2025) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

To establish parens patriae standing, a state "must assert an injury" to a "sovereign" or "quasi-sovereign" interest of its own. Snapp, 458 U.S. at 601–02. Sovereign interests include the power "to create and enforce a legal code" and the right to "recognition from other sovereigns." Id. at 601. Quasi-sovereign interests concern "the well-being of [the state's] populace," including its residents' "physical and economic" well-being. Id. at 602, 607. In either case, the state "must articulate an interest apart from the interests of particular private parties" to establish parens patriae standing. Id. at 607. When a state pursues private interests "only for the sake of the real party in interest," it is "no more than a nominal party" and thus lacks parens patriae standing. Id. at 602.

In Chapman, the Sixth Circuit applied those principles to a state seeking to intervene in a class settlement. 940 F.3d at 305–06. In that decision, Arizona asserted a quasi-sovereign interest in protecting its residents' economic health and well-being under its state laws and rules intended to protect consumers. Id. The Sixth Circuit rejected that argument because Arizona's objections were "indistinguishable from the objections which individual Arizonans might raise," making it "merely a nominal party." Id. at 306. Thus, because Arizona alleged only injury to identifiable class members and did not show broader "indirect effects" on the state, it had "not shown any imperiled quasi-sovereign interests" and lacked parens patriae standing. Id.

Here, like Chapman, the Court finds that the State AGs lack standing to intervene because they have not established an injury to a sovereign or quasi-sovereign interest beyond the interests of the settling class members. See id. As previously explained, the proposed settlements release class members' claims for compensation for inflated rents while preserving and carving out claims that permit the State AGs to vindicate their independent sovereign or quasi-sovereign interests, including civil penalties or fines and further injunctive relief. (Doc. No. 1463 at 2–3). The State AGs remain free to pursue those sovereign claims. But they cannot establish standing to intervene

in this case based merely on the same injuries sustained by the settling individual class members without showing more. They have not done so. As to those injuries, the State AGs are "nominal part[ies]" asserting private interests, not sovereign or quasi-sovereign interests. See Snapp, 458 U.S. at 602, 607; Chapman, 940 F.3d at 305–06.

The district court in In re Generic Pharmaceuticals Pricing Antitrust Litigation ("Generic Pharmaceuticals"),[2] reached a similar conclusion. There, states prosecuting parallel statutory parens patriae actions sought to intervene in a private class settlement. In re Generic Pharms. Pricing Antitrust Litig. ("Generic Pharms."), No. 16-MD-2724, slip op. at 3–5 (E.D. Pa. Aug. 19, 2025). The district court held that the states had "only a nominal interest . . . insufficient to confer standing to intervene" because they had not shown that their parens patriae authority, "whether statutory or not, supplants the ability of consumers to pursue actions for damages." Id. at 5. Accordingly, the district court denied intervention for lack of standing, permitted the states to present their objections as amici curiae, and reserved ruling on the merits of those objections for final approval. Id. at 5–6.

The Court finds that reasoning persuasive and adopts it here. Most importantly—and to reiterate again—the proposed releases here do not injure the sovereign or quasi-sovereign interests that the State AGs claim to protect. (See Doc. No. 1463 at 2–3). The State AGs assert a generic "interest in the economic 'health and well-being' of their residents" (Doc. No. 1498 at 12), but their authority to recover damages for those residents does not "supplant[] the ability" of the residents to settle their own claims. Generic Pharms., slip op. at 5. The State AGs also identify an interest in the broader rental economy, citing the alleged "effects on rents across affected rental

[2] The district court's order in In re Generic Pharmaceuticals Pricing Antitrust Litigation on the states' motion to intervene is unpublished. It is attached to Plaintiffs' opposition as an exhibit at (Doc. No. 1549-1).

markets" beyond the individual settling class members. (Doc. No. 1498 at 12). True, those broader "indirect effects" on the rental economy, Chapman, 940 F.3d at 306, go beyond the settling Plaintiffs' interests and likely implicate the State AGs' quasi-sovereign interests. Even so, standing requires an injury to that interest caused by the challenged releases. The proposed releases do not cause a concrete harm to that quasi-sovereign interest. If anything, compensating injured renters through private settlement *advances* the economic well-being of the states' residents. Even more, the State AGs—as all parties acknowledge, and as the Court has already ruled (Doc. No. 1463 at 2–3)—remain free to pursue that broader interest through their independent sovereign and quasi-sovereign enforcement authority. For all those reasons, the State AGs have not established a concrete injury in fact to a sovereign or quasi-sovereign interest caused by the proposed releases sufficient to confer parens patriae standing. See Snapp, 458 U.S. at 602, 607; Chapman, 940 F.3d at 305–06. They cannot intervene as of right. See Town of Chester, 581 U.S. at 440.

The State AGs offer no shortage of arguments to the contrary. None changes the conclusion that they lack standing.

First, the State AGs point to language in certain releases expressly encompassing parens patriae claims for damages, restitution, and disgorgement. (Doc. No. 1498 at 6–7, 9–10). But the releases address parens patriae claims only to the extent they seek recovery for the same injuries sustained by settling class members, while preserving claims vindicating the State AGs' independent interests. The Court will consider the language of the releases and the State AGs' objections to the precise scope and effect of those releases at the final approval hearing.

Second, the State AGs argue that their enforcement actions are outside this Court's jurisdiction and exempt from multidistrict transfer, and that private litigants cannot release claims

belonging to nonconsenting states. (Doc. No. 1498 at 9–11). That again misses the point. No one is releasing claims that belong to the State AGs. Again, the individual class members are settling their own individual claims, and the State AGs remain at liberty to pursue their own independent enforcement claims. (See Doc. No. 1463 at 2–3). The authorities that the State AGs rely on in support of this point are inapposite.

Third, the State AGs worry that settling Defendants may invoke the releases to interfere with pending enforcement actions. (Doc. No. 1498 at 11, 17 n.8). They represent that certain Defendants have already done so. (Id. at 17 n.8). But Defendants cannot expand a settlement's effect by asserting an interpretation that its terms do not support. As the Court has explained, the settlements explicitly preserve the State AGs' independent sovereign and quasi-sovereign claims. (See Doc. No. 1463 at 2–3). The Court reiterates that conclusion here and will address the scope of the proposed releases with the parties at the final approval hearing. The possibility that Defendants may argue otherwise does not establish that the settlements in fact injure an interest they expressly preserve.

Fourth, the State AGs rely on federal and state statutes authorizing them to enforce antitrust laws and recover monetary relief for residents. (Doc. No. 1498 at 12). That argument is a non sequitur. The State AGs' statutory authority to pursue monetary relief does not establish that the proposed releases here injure a sovereign or quasi-sovereign interest of their own. If it were otherwise, any state attorney general could establish standing to challenge a private settlement merely because the legislature authorized that state attorney general to pursue compensation for the same injuries. That result would eliminate the distinction between sovereign and private interests that controlling authority expressly requires. See Snapp, 458 U.S. at 602, 607; Chapman,

940 F.3d at 305–06. Moreover, although the alleged market-wide effects may implicate a broader quasi-sovereign interest, the State AGs have not shown that the releases here harm that interest.

Fifth, the State AGs distinguish Chapman because, unlike in that decision, they have already filed independent enforcement actions. (Doc. No. 1498 at 12–13). That distinction is inapposite. Chapman, like this case, turned on the absence of an injury to a sovereign or quasi-sovereign state interest. 940 F.3d at 305–06. Nothing about its holding turned on whether the state had already commenced an enforcement action. See id. Regardless of whether the State AGs have already commenced an enforcement action, they have not articulated a harm sufficient to confer parens patriae standing. They remain free to pursue those enforcement actions.

Finally, the State AGs argue that Congress expressly contemplated overlapping private and parens patriae antitrust recoveries and provided an offset under 15 U.S.C. § 15c(a)(1) to prevent double recovery. (Doc. No. 1498 at 16–17). Specifically, § 15c(a)(1) authorizes the State AGs to bring an action as "parens patriae" "for injury sustained by such natural persons" and directs courts to "exclude" monetary relief that "duplicates amounts which have been awarded for the same injury." Nothing in that language confers parens patriae standing to intervene in the proposed settlements here. The statute merely authorizes the State AGs to pursue monetary recovery in their own actions as parens patriae and provides a mechanism for preventing duplicative recovery. As the district court recognized in Generic Pharmaceuticals, the State AGs' argument concerning offsetting "is properly considered in evaluating the proposed settlement," Generic Pharms., slip op. at 5, but it does not establish that the proposed releases here injure an independent sovereign or quasi-sovereign interest sufficient to confer parens patriae standing to intervene.

All in all, the State AGs have failed to establish Article III standing to intervene. Their sovereign and quasi-sovereign interests remain untouched. Their asserted interest in recovering

the settling class members' monetary losses is nominal under controlling authority. Snapp, 458 U.S. at 602, 607; Chapman, 940 F.3d at 305–06. That same reasoning also defeats the second and third requirements for intervention as of right. The State AGs have identified no substantial legal interest of their own in the settling class members' monetary claims. Again, the settlements do not impair their independent sovereign or quasi-sovereign interests. See Michigan, 424 F.3d at 443. The State AGs cannot intervene as of right.

## II. Permissive Intervention

The Court next considers whether to permit the State AGs to intervene under Rule 24(b). As relevant here, that rule permits intervention when a proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). It also permits intervention by a "federal or state governmental officer or agency" when a party's claim or defense is based on "a statute or executive order administered by the officer or agency." Id. 24(b)(2)(A). Even when those requirements are met, permissive intervention remains within the Court's discretion. Id. 24(b)(1). The Court must "balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." Michigan, 424 F.3d at 445.

The State AGs argue that they satisfy both of those grounds for permissive intervention. First, the State AGs argue that they administer federal and state antitrust statutes that are implicated by the proposed settlements and that Rule 24(b)(2) "exists to permit governmental officers to participate in precisely these circumstances." (Doc. No. 1498 at 20–22). Next, they argue that, under Rule 24(b)(1), their objections "share common questions of law and fact with issues the Court must resolve" at final approval and that their limited participation would require no "additional discovery or delay." (Id. at 23).

The Court will assume each point in their favor. Even so, after considering "undue delay and prejudice to the original parties," Michigan, 424 F.3d at 445, the Court will not permit the State AGs to intervene in the final-approval proceedings. For all the reasons explained above, the proposed releases do not injure the State AGs' independent sovereign or quasi-sovereign interests. Moreover, the Court can fully consider the State AGs' objections without granting them party status, which would potentially delay the administration of the proposed settlements.

The more appropriate course is to consider the State AGs' objections as amici curiae. That is precisely what the district court did in Generic Pharmaceuticals. Generic Pharms., slip op. at 5–6. Accordingly, the Court will deny permissive intervention but will treat the State AGs' objections (Doc. No. 1499) as amici curiae and give them appropriate consideration when deciding whether to grant final approval. The Court expresses no view on the merits of those objections at this time.

## III. Conclusion

"The allocation of powers in our federal system preserves the integrity, dignity, and residual sovereignty of the States." Bond v. United States, 564 U.S. 211, 221 (2011). This Court does not take that principle lightly. In overseeing this MDL, involving numerous parties and claims across the country, the Court has been entrusted with the difficult task of facilitating a fair resolution of private disputes while respecting the independent sovereign authority of the State AGs. The Court has given both interests due consideration and, for the reasons above, will deny the State AGs' motion to intervene (Doc. No. 1497). The Court will nevertheless consider the State AGs' objections as amici curiae at the final approval hearing. In preparation for the final approval hearing, the Court directs the State AGs, Plaintiffs, and Overlapping Defendants to meet and confer to address the State AGs' concerns.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE